UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:13-CV-00036-TBR

CINCINNATI INSURANCE COMPANY            Plaintiff

v.

HAROLD WILKERSON, *et al.*            Defendants

**MEMORANDUM OPINION**

This matter is before the Court upon Plaintiff Cincinnati Insurance Company's Motion for Summary Judgment. (Docket No. 26.) Defendant Harold Wilkerson has responded, (Docket No. 30), and Plaintiff has replied, (Docket No. 32). This matter now is ripe for adjudication. For the following reasons, Plaintiff's Motion for Summary Judgment, (Docket No. 26), will be GRANTED.

BACKGROUND

This declaratory judgment action arises out of a fall sustained by a minor in October 2010 at a vacant hotel situated on premises owned by Defendant Harold Wilkerson at 221 W. Main Street in Campbellsville, Kentucky. The minor's guardian, Angela Graham, filed suit against Wilkerson in Taylor Circuit Court on March 4, 2013.

Wilkerson purchased the property at 221 W. Main Street in 1997. The plat for 221 W. Main Street shows that the property was divided into three lots. An active hotel complex was located on Lot 1, an abandoned motel was located on Lot 2, and Lot 3 was vacant and undeveloped. At the time of purchase, the hotel on Lot 1 was operated as an apartment complex with a restaurant located in the basement. The hotel remained in

operation until a fire in the restaurant occurred sometime on 2003 or 2004. The hotel was closed after the restaurant fire pending a fire marshal's investigation, during which time the building was ransacked by vandals, thereafter making it impractical to repair. The hotel has remained vacant since the time of the fire.

When Wilkerson purchased the property, the hotel was insured under a policy issued by Ohio Casualty. At the end of the policy period, however, the Ohio Casualty policy was not renewed because of a change in Ohio Casualty's underwriting standards concerning the number of units in the hotel. According to Wilkerson, Taylor County Bank thereafter procured liability and property insurance for the hotel to cover its mortgage interest in the property. Wilkerson maintained no other coverage on the hotel following the nonrenewal of the Ohio Casualty policy. (Docket No. 26-2, at 6-8.) The policy procured by Taylor County Bank covered the bank's interest following the fire to the hotel. Wilkerson made no claims on any insurance policy as a result of that fire. The property at 221 W. Main Street thereafter remained uninsured until late 2007.

Wilkerson contacted his agent, Scott Jessie, in November 2007 to obtain insurance coverage for property Wilkerson owned at 2028 Campbellsville Road in Greensburg, Kentucky, on which a rental house and warehouse are located. A "Commercial Insurance Application" was submitted by the Jessie Insurance Agency to Cincinnati Insurance Company on November 28, 2007, requesting liability and property coverage for the two structures located on the Greensburg property. Cincinnati Insurance Company issued Commercial Policy No. CPP 365 11 40 (the "Policy") to Wilkerson for the policy period of November 28, 2007, through November 28, 2010. (*See* Docket No. 1-1.) The Policy contained a "Schedule of Locations" endorsement

listing the insured location as the property at 2028 Campbellsville Road in Greensburg. (Docket No. 1-1, at 35.) The Policy also contained a "Limitation of Coverage to Designated Premises or Project" endorsement providing that the Policy's commercial general liability coverage applied only to bodily injury arising out of "[t]he ownership, maintenance, or use of the premises shown in the Schedule [of Locations endorsement]." (Docket No. 1-1, at 37.)

After the issuance of the Policy, Wilkerson contacted Jessie to request that a renovated structure on the property at 221 W. Main Street in Campbellsville be added to the Policy. Wilkerson advised Jessie that he had renovated a structure on the 221 W. Main Street property into nine one-bedroom rental units and that he needed to insure the renovated structure as a condition of the loan he had taken to finance the renovations. A "Commercial Policy Change Request" was submitted to Cincinnati Insurance Company in January 2008, which listed a single-story structure built in 1956 with improvements to the plumbing, heating, roofing, and wiring in 2007. (Docket No. 1-4, at 1-2.) The Commercial Policy Change Request also identified Taylor County Bank as a mortgagee with an additional interest in the property. (Docket No. 1-4, at 2.) Jessie testified in his deposition that Wilkerson did not request coverage for the vacant hotel on Lot 1 at that time or any time since. (*See* Docket No. 26-11, at 6, 11.) Jessie further testified that had Wilkerson requested coverage for the vacant hotel, Cincinnati Insurance Company would not have issued a policy providing such coverage, and that Jessie would have had to contact a specialty market insurer to locate coverage. (Docket No. 26-11, at 12.)

Jessie visited the premises at 221 W. Main Street to confirm that the building was being remodeled as Wilkerson had indicated and determined that the building being

renovated was the formerly abandoned motel located on Lot 2. Jessie testified that when he inspected the property, he observed that improvements had been made converting the formerly abandoned motel on Lot 2 into one-bedroom apartments. (Docket No. 26-11, at 10.) Jessie further testified that he observed no improvements to the vacant hotel and that there was no discussion of any such improvements having been made. (Docket No. 26-11, at 10.) Jessie was unaware that the renovated apartment building shared a physical address with the vacant hotel on Lot 1. Jessie knew that Wilkerson owned the vacant hotel because the Jessie Agency had insured the restaurant operated in the hotel (through a different carrier) until the restaurant closed as a result of the fire. (Docket No. 26-11, at 9.) Jessie assumed, however, that the vacant hotel had a separate address because of the layout of the property. (*See* Docket No. 26-11, at 7-8.)

Pursuant to the policy change request, Cincinnati Insurance Company issued a "General Change Endorsement" effective January 2, 2008, which amended the Schedule of Locations to include 221 W. Main Street. (Docket No. 1-1, at 32.) That endorsement shows that one building was added to the commercial property form and that nine single-family dwellings were added to the commercial general liability form. (Docket No. 1-1, at 32.) The Limitation of Coverage to Designated Premises or Project endorsement also was amended to include the specified property at 221 W. Main Street location. (Docket No. 1-1, at 32.)

STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to

any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; he must present evidence on which the trier of fact could reasonably find for him. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). "[T]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Still, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). Finally, while the substantive law of Kentucky is applicable here pursuant to *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W2d

476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993), *abrogated on other grounds by Hertz Corp. v. Friend*, 559 U.S. 70 (2010).

DISCUSSION

Cincinnati Insurance Company argues that summary judgment is warranted because the unambiguous terms of the Policy and its endorsements limited coverage to the renovated apartment building (*i.e.*, the formerly abandoned motel) on Lot 2 and did not extend to the vacant hotel structure on Lot 1. Cincinnati Insurance Company further argues that because the parties did not intend the Policy to cover the vacant hotel, the Court should reform the Policy to accurately reflect the true intent to insure only the renovated apartment building located at 221 W. Main Street.[1]

It is well settled that the proper interpretation of insurance contracts is a matter of law to be decided by a court. *E.g.*, *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 73 (Ky. 2010). "Policies should be interpreted according to the parties' mutual understanding at the time they entered into the contract and '[s]uch mutual intention is to be deduced, if possible, from the language of the contract alone.'" *Nationwide Mut. Ins. Co. v. Nolan*, 10 S.W.3d 129, 131-32 (Ky. 1999) (alteration in original) (quoting *Simpsonville Wrecker Serv., Inc. v. Empire Fire & Marine Ins. Co.*, 793 S.W.2d 825, 828-29 (Ky. 1990)).

---

[1] Cincinnati Insurance Company additionally argues that Wilkerson did not provide timely notice in accordance with the policy's requirements. Though doubtful that it has adequately made the showing of prejudice that Kentucky law requires before an insurer may deny coverage on the basis of the insured's failure to provide prompt notice, *see, e.g.*, *Jones v. Bituminous Cas. Corp.*, 821 S.W.2d 798, 801 (Ky. 1991), because the instant Motion is resolved by addressing its other arguments, the Court need not discuss this issue further.

"[D]etermining whether a contract is ambiguous," the Kentucky Supreme Court advises, also "is a question of law for the courts." *3D Enters. Contracting Corp. v. Louisville & Jefferson Cnty. Metro. Sewer. Dist.*, 174 S.W.3d 440, 448 (Ky. 2005). "In the absence of an ambiguity, Kentucky courts will enforce a written instrument strictly according to its terms and will assign those terms their ordinary meaning." *Davis v. Siemens Med. Solutions USA, Inc.*, 399 F. Supp. 2d 785, 792 (W.D. Ky. 2005) (citing *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky. 2003)). Furthermore, "[t]erms of insurance contracts have no technical meaning in law and are to be interpreted according to the usage of the average man and as they would be read and understood by him in the light of the prevailing rule that uncertainties and ambiguities must be resolved in favor of the insured." *Ky. Ass'n of Cntys. All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 630 (Ky. 2005) (quoting *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991)). But this "rule of strict construction against an insurance company certainly does not mean that every doubt must be resolved against it and does not interfere with the rule that the policy must receive a reasonable interpretation consistent with the parties' object and intent or narrowly expressed in the plain meaning and/or language in the contract." *St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 226 (Ky. 1994). Accordingly, "where there is no ambiguity, the rule of liberal construction in favor of the insured is inapplicable," *McClendon*, 157 S.W.3d at 633 (citing *Frear*, 103 S.W.3d at 106), and "[w]hen the terms of an insurance contract are unambiguous and not unreasonable, they will be enforced," *id.* at 630 (collecting cases).

# I. The Policy's General Liability Coverage Does Not Extend to the Vacant Hotel.

Cincinnati Insurance Company first argues that the general liability coverage of the Policy at issue is limited by its terms to the renovated apartment building on Lot 2 of the 221 W. Main Street property. The Court agrees.

It is undisputed that there were two structures located on the 221 W. Main Street property at the time Wilkerson purchased the property in 1997: the hotel on Lot 1, and the abandoned motel on Lot 2. The record is clear that the building Wilkerson requested to be added to the Policy was the formerly abandoned motel, which he had renovated and converted into a nine-unit apartment building in 2007, and for which he had taken out a loan. The hotel where the alleged injury occurred had been vacant since the 2003/2004 restaurant fire, and Wilkerson made no renovations or other use of that structure after the fire. The fact that Wilkerson did not seek coverage for the vacant hotel when he met with Jessie in late 2007 is confirmed by the Policy Change Request, which specified the property to be insured at 221 W. Main Street as one single-story building on which substantial improvements had been made in 2007. The General Change Endorsement, which shows that one building was added to the commercial property form and that nine single-family dwellings were added to the commercial general liability form, further confirms that Wilkerson did not seek coverage for the vacant hotel. These descriptions are perfectly consistent with the abandoned motel/renovated apartment building on Lot 2; the vacant hotel on Lot 1, however, does not fit the descriptions on either the Policy Change Request or the General Change Endorsement. Thus, despite that both the vacant hotel and the renovated apartment building share the same physical address of 221 W. Main Street, the Policy was clearly

amended to provide coverage for the renovated apartment building on Lot 2, not the vacant hotel on Lot 1.

## II. The Policy Endorsement Limiting Coverage to the Renovated Apartment Building Is Not Ambiguous.

For the reasons discussed above, the Court finds that the language of the Policy endorsement was not ambiguous in limiting coverage to the renovated apartment building located on Lot 2. However, even if the Policy could be construed as ambiguous, it is clear from the record that Wilkerson had no reasonable expectation that the Policy would provide coverage for injuries occurring at the vacant hotel on Lot 1.

An ambiguity exists when the terms of a policy are susceptible to two or more reasonable interpretations. *True v. Raines*, 99 S.W.3d 439, 443 (Ky. 2003). As noted above, when an ambiguity exists, the ambiguous terms should be interpreted in favor of the insured's reasonable expectations. *See id.* Still, "[t]he mere fact that [a party] attempt[s] to muddy the water and create some question of interpretation does not necessarily create an ambiguity." *Id.* (alterations in original) (footnote omitted). "Only actual ambiguities, not fanciful ones, will trigger application of the doctrine." *Id.* (footnote omitted). Under Kentucky law, the proper area of inquiry is what the insured could reasonably expect in light of what he actually paid for, not what he personally expected. *Burton v. Farm Bureau Ins. Co.*, 116 S.W.3d 475, 479 (Ky. 2003) (referencing *Estate of Swartz v. Metro. Prop. & Cas. Co.*, 949 S.W.2d 72, 76 (Ky. Ct. App. 1997)).

Here, assuming the fact that the vacant hotel and renovated apartment building shared a common physical address created an ambiguity in the Policy's terms, the

record is clear that Wilkerson had no reasonable expectation that the Policy provided coverage for injuries occurring at the vacant hotel. Wilkerson conceded in his deposition that never inquired about insurance coverage for the hotel after the fire and did not intend to purchase insurance coverage for the hotel—indeed, Wilkerson understood he would be personally liable if anyone was injured at the vacant hotel building:

> Q. Okay. Let me ask you this, prior to -- or after the fire, why didn't you go ahead and have insurance on the hotel?
>
> A. I don't know that I considered it.
>
> . . . .
>
> Q. Okay. So you were running it not as an hotel, you were running it as an apartment building?
>
> A. Yes, sir.
>
> Q. Okay. And you were told with an active business that you couldn't get insurance?
>
> A. For that number of units.
>
> Q. Okay. Did you ever check with anybody after the fire if you [could] get insurance for it with it vacant?
>
> A. No, sir.
>
> Q. Never talked to any agent?
>
> A. No, sir.
>
> Q. Or anybody else about it?

>       A.      No, sir.
>
>       Q.      What was your understanding of that time of who would
>               be responsible if somebody got hurt on the hotel?
>
>       A.      I suppose I would've been responsible.

(Docket No. 26-2, at 21.) Moreover, the General Change Endorsement, which amended the Schedule of Locations to include 221 W. Main Street, reflects that Wilkerson was charged an additional general liability premium for one building having nine single-family dwellings. (*See* Docket No. 1-1, at 32.) Thus, he could not reasonably expect that the additional coverage purchased under that endorsement covered anything other than the recently renovated apartment building on Lot 2, nor did he pay any premiums for such coverage.

**III.    Reformation of the Policy Is Unnecessary.**

Finally, Cincinnati Insurance Company argues that if the Policy can be read to afford broader coverage, it should be reformed to accurately reflect the parties' intent. Under Kentucky law, a contract for insurance may be reformed if there is mutual mistake. *See, e.g.*, *Hanover Ins. Co. v. Am. Eng'g Co.*, 33 F.3d 727, 731 (6th Cir. 1994) (citing *Deskins v. Leslie*, 387 S.W.2d 596, 597 (Ky. 1965)); *Owners Ins. Co. v. Lyons Lumber Co.*, 2006 WL 905935, at *6 (E.D. Ky. Apr. 7, 2006) (referencing *Flimin's Adm'x v. Metro. Life Ins. Co.*, 75 S.W.2d 207, 209 (Ky. 1934)). Wilkerson appears to argue in his Response that he intended the liability coverage of the Policy to apply to the entirety of the premises at 221 W. Main Street. The Court is unpersuaded as to the existence of such a mistake. Although the Policy identifies the location as 221 W. Main Street, as discussed above, it is clear on the face of the Policy that coverage was

provided for one single-story, nine-unit building at that address. There simply is nothing in the language of the Policy to support Wilkerson's position that the Policy was intended to cover the vacant hotel or any other portion of the 221 W. Main Street property other than the renovated apartment building. Accordingly, the Court finds no reason to reform the Policy here.

## CONCLUSION

Having considered the parties' Joint Motion and being otherwise sufficiently advised, the Court will GRANT Plaintiff Cincinnati Insurance Company's Motion for Summary Judgment. Accordingly, Cincinnati Insurance Company has no obligation to defend or indemnify Defendant Harold Wilkerson under the Policy for any claims asserted in the Taylor Circuit Court action styled *Angela Graham v. Harold Wilkerson*, Civil Action No. 13-CI-000084. An appropriate Order will issue concurrently with this Opinion.

Date:



cc: Counsel